1  DAVID L ANDERSON (CABN 149064)
   United States Attorney
2
   HALLIE HOFFMAN (CABN 210020)
3  Chief, Criminal Division

4  ROBIN L. HARRIS (CABN 123364)
   LLOYD FARNHAM (CABN 202231)
5  Assistant United States Attorneys

6       450 Golden Gate Avenue, Box 36055
        San Francisco, California 94102-3495
7       Telephone: (415) 436-7200
        Fax: (415) 436-7234
8       Robin.Harris2@usdoj.gov
        Lloyd.Farnham@usdoj.gov
9

10 Attorneys for the United States

11              UNITED STATES DISTRICT COURT

12             NORTHERN DISTRICT OF CALIFORNIA

13                SAN FRANCISCO DIVISION

14
   UNITED STATES OF AMERICA,            )  CASE NO. CR 18-0310 EMC
15                                       )
           Plaintiff,                    )
16                                       )  **UNITED STATES' EX PARTE MOTION**
       v.                                )  **FOR ORDER TO SHOW CAUSE RE**
17                                       )  **CONTEMPT AND [PROPOSED] ORDER**
   LAWRENCE J. GERRANS,                  )
18                                       )
           Defendant.                    )  Date:  February 26, 2019
19                                       )  Time:  2:30 p.m.
   _____)  Court: Hon. Edward M. Chen
20

21

22

23

24

25

26

27

28

# INTRODUCTION

On January 29, 2020, a jury convicted defendant Lawrence Gerrans of all 12 counts in the Second Superseding indictment, including Counts 10, 11 and 12, which related to defendant's efforts to harass, intimidate and tamper with cooperating witness C.G.  After the trial, the government learned that the defendant's wife, Shelly Gerrans, who is not a member of the "defense team," provided copies of discovery—including interview memoranda of cooperating witness C.G.—to the defendant's father, Art Gerrans, Sr.  The government now moves this Court ex parte to issue an order to show cause as to why the defendant should not be found in contempt for violating this Court's Protective Order (Dkt. 11 and Exhibit 1 attached hereto).[1]  Specifically, the defendant violated the Court's Protective Order by providing criminal discovery, including FBI 302s relating to C.G., to his wife Shelly Gerrans, who in turn gave the FBI 302s to Art Gerrans, Sr.  Art Gerrans, Sr. was identified as a potential witness on the government's witness list and was, pursuant to this Court's witness exclusion order, precluded from hearing C.G.'s trial testimony.  In light of the violations of the Protective Order, the government respectfully requests the Court to order the following:

First, that defendant Lawrence Gerrans be directed to show cause as to why he should not be held in contempt for violation of the Court's Protective Order.

Second, that defendant Lawrence Gerrans be directed to immediately return to the United States all documents and materials he received during the criminal case.

Third, that a copy of the Court's order to show cause be served on Shelly Gerrans by the United States and that said order direct Shelly Gerrans to appear before this Court to be admonished about the terms of the Protective Order in this case.

Fourth, that Shelly Gerrans be ordered to immediately return to the United States all discovery documents and materials she received from her husband, including the discovery file that Lawrence Gerrans copied to his wife's computer.

---

[1] On February 19, 2020, the government provided telephone notice to defendant's attorney of the government's intention to file this motion, and the motion has been filed and served on the defendant's attorney through the ECF System.  It is filed *ex parte* in order to request that the Court issue an Order to Show Cause and hear the matter on shortened time.

UNITED STATES' MOT. FOR OSC
CR 18-0310 EMC

## FACTS REGARDING DEFENDANT'S VIOLATION OF THE ORDER

### A.    The Court's Protective Order

On August 24, 2018, this Court issued a Protective Order governing the terms under which the United States was to provide discovery materials to the defense. (Dkt. 11, and Exhibit 1 hereto). The Protective Order permitted the "defense team," defined as "defense counsel of record, their investigators, assistants, and employees" to review with the defendant unredacted copies of discovery materials. The Court's order specifically stated:

> IT IS FURTHER ORDERED that neither a *defendant* nor any member of the defense team shall provide any discovery material produced by the government—whether or not the material constitutes or contains Protected Information within the meaning of this Order—to any third party (, *i.e.* any person who is not a member of the defense team) or make any public disclosure of the same, other than in a court filing, without the government's express written permission or further order of this Court.

Exhibit 1, pg. 2-3, italics added.

The defendant did not have the government's permission to release discovery to any third party. The government is unaware of any Court order permitting defendant to disclose discovery to a third party, let alone FBI 302s of a cooperating witness, whom has been the subject of a relentless campaign of harassment and intimidation, throughout the pendency of this case. Recorded jail phone calls between defendant and his wife make it clear that: (1) defendant knew that his wife was planning to disseminate the 302s of C.G. to other family members, including Art Gerrans, Sr. and (2) prior to the revocation of his bond, defendant copied the discovery he received from the government to his personal computer, a flash drive and to his wife's computer.

### B.    Recorded Calls between Defendant and Shelly Gerrans

The government recently obtained jail recordings of conversations between the defendant and others, including his wife, Shelly Gerrans. Three pertinent audio clips from several of these conversations have been lodged with the Court and provided to counsel for the defendant (See copy of disc attached hereto as Exhibit 2). In these recordings, dated February 1 and 2, 2020, Shelly Gerrans clearly tells the defendant that she has been reviewing the discovery provided to the defendant and that she plans to give FBI 302s relating to C.G. to Art Gerrans Sr. (who was also a witness on the government's witness list) so that Art Gerrans Sr. could read what C.G. had been saying about relevant

1   interactions between Art Gerrans Sr. and C.G..  The interactions between C.G., Art Gerrans Sr. and the

2   defendant, were described during C.G.'s trial testimony and provided factual context for the contempt,

3   witness tampering and obstruction of justice counts (counts 10, 11 and 12).   In another recording, Shelly

4   Gerrans confirmed that she had, in fact, given Art. Sr. copies of FBI 302s relating to C.G.'s interviews

5   with the government and that Art Gerrans Sr. was "pissed" when he read them.  Art Gerrans Sr. was

6   excluded from the trial (as were all witnesses who might be called to testify) so that he could not

7   conform or alter his testimony to fit with other witnesses' trial testimony.

8        Shelly Gerrans was present at the pretrial conference in this case when the Court indicated its

9   intention to issue a witness exclusion order, and she was also aware that Art Gerrans Sr. was a potential

10  witness.

11                                          **ARGUMENT**

12       Pursuant to Fed. R. Crim. P. 16(d)(2)(D), and the Court's inherent power to enforce its orders,,

13  this Court has the power to hold the defendant in civil contempt of court, and to require both the

14  defendant and Shelly Gerrans to return all discovery to the government forthwith.  The purpose of civil

15  contempt is the enforce compliance with court orders, and the remedies for civil contempt are

16  "compensatory and coercive," including orders remedying past wrongs.  *Falstaff Brewing Corp. v.*

17  *Miller Brewing Co.*, 702 F.2d 770, 778 (9th Cir. 1983).  "Civil contempt … consists of a party's

18  disobedience to a specific and definite court order by failure to take all reasonable steps within the

19  party's power to comply." *Institute of Cetacean Research v. Sea Shepherd*, 774 F.3d 935, 945 (9th Cir.

20  2014) (citations omitted).  A party may also be found in civil contempt for aiding and abetting another to

21  violate a court order.  *Id.*

22       Defendant's disclosure of discovery to his wife, who in turn disclosed the discovery to

23  individuals involved in this case, plainly runs afoul of the Court's Protective Order.  Disclosure of

24  C.G.'s 302s to other family members and witnesses in this case was and is inherently a risk to C.G.'s

25  safety and security and appears to be intended as another effort to intimidate him.  This Court is all too

26  familiar with the escalating witness intimidation and harassment that the defendant and his father have

27  inflicted on C.G.  Trial testimony from C.G. and Ryan Swisher showed that the defendant waged a

28  campaign of harassment against C.G., which culminated in the August 13, 2020 episode at the San

1    Rafael storage facility.  As Ryan Swisher testified, the defendant threatened that he would have killed

2    C.G. if there were not so many surveillance cameras at the storage facility.  This particular encounter

3    demonstrates that C.G., who cooperated with the government's investigation, is clearly someone whom

4    the defendant wanted to retaliate against and would retaliate against, if given the opportunity.

5         The defendant also used his father, Art Gerrans Sr., as an intermediary to pass messages to C.G.

6    to try to tamper with C.G.'s testimony, in violation of the Court's bond order.  Under these particular

7    circumstances, it was both intentional and particularly harmful that Shelly Gerrans transmitted the 302s

8    of C.G.'s interviews to Art Gerrans Sr.  Shelly Gerrans' actions—and the defendant's in providing her

9    with access to the discovery in the first place—have upended the disclosure procedures the Court set

10   forth for discovery in its Order.  The purposeful disclosure to Art Gerrans, Sr. was intended to rile a

11   government witness and was a transparent attempt to sow discord and create further estrangement

12   between C.G. and his father.  The disclosure clearly had nothing to do with "the specific purpose of

13   preparing or presenting a defense in this matter" as required by the Protective Order.  Exhibit 1, pg. 2.

14   Shelly Gerrans was present at the pretrial conference when the Court stated an intention to issue a

15   witness exclusion order, and was aware that Art Gerrans Sr. was a potential witness. By providing

16   copies of FBI 302s to Art Gerrans Sr. not only did the defendant violate the Protective Order, but Shelly

17   Gerrans also effectively nullified the Court's witness exclusion order.

18        It is of no consequence that Shelly Gerrans aided and abetted the violation of the Protective

19   Order after the jury's verdict.  The Protective Order is in effect until "14 days after defendant's

20   sentencing, or the conclusion of any direct appeal" "whichever event occurs last in time."  Exhibit 1,

21   pg. 3.  This time-frame specifically contemplates protection of discovery for the duration of the criminal

22   case, not at the conclusion of the jury's verdict.

## CONCLUSION

24        Based on the foregoing, the United States respectfully requests the Court to issue an order to

25   show cause as to why the defendant should not be held in contempt for violating the Court's Protective

26   //

27   //

28   //

1  Order.  The government further requests the Court to enforce the existing Protective Order by issuing an

2  order requiring Shelly Gerrans to return all discovery and all copies of discovery to the government

3  forthwith.

4

5  DATED: February 19, 2020                          Respectfully submitted,

6                                                    DAVID L. ANDERSON
                                                     United States Attorney
7

8  _____/s/_____
                                                     ROBIN L. HARRIS
9                                                    LLOYD FARNHAM
                                                     Assistant United States Attorneys
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# Exhibit 1

ALEX G. TSE (CABN 152348)
United States Attorney

BARBARA J. VALLIERE (DCBN 439353)
Chief, Criminal Division

ROBIN HARRIS (CABN 122364)
Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-7016
    FAX: (415) 436-7234
    Robin.harris2@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. CR 18-00310 EMC |
| Plaintiff, | STIPULATION AND PROTECTIVE ORDER [PROPOSED] |
| v. | |
| LAWRENCE GERRANS, | |
| Defendant. | |

With the agreement of the parties, the Court enters the following Protective Order:

Defendant is charged with wire fraud and money laundering. Upon receipt of a discovery request, the United States will produce documents and other materials pertaining to the defendant and the charged offenses to defense counsel. The discovery to be provided includes documents or other materials falling into one or more of the following categories (collectively, "Protected Information"):

1. Personal Identifying Information of any individual (other than his or her name), including without limitation any person's date of birth, social security number, residence or business address, telephone numbers, email addresses, driver's license number, professional license number, family members names, or criminal histories ("Personal Identifying Information");

PROTECTIVE ORDER
CR 18-00310 EMC

2. Financial information of any individual or business, including without limitation bank account numbers, credit or debit card numbers, account passwords, contact information, and taxpayer identification numbers ("Financial Information"); and

3. Medical records or other patient information of any individual covered by the Health Insurance Portability and Accountability Act of 1996 (HIPPA) ("Medical Information").

To ensure that Protected Information is not subject to unauthorized disclosure or misuse,

**IT IS HEREBY ORDERED** that defense counsel of record, their investigators, assistants, and employees (collectively, "the defense team") may review with the defendant all discovery material produced by the government, but shall not provide a defendant with copies of, or permit defendant to make copies of, or have unsupervised access to, any discovery material produced by the government that contains Protected Information, unless the Personal Identifying Information, Financial Information, and/or Medical Information has first been **entirely redacted** from the discovery materials. The government and defense counsel are ordered to work together to ensure that these materials are protected, but that defendant has as much access to the materials as can be provided consistent with this Court's order. Discovery material that clearly pertains to a specific defendant and does not contain Protected Information regarding any other person (*e.g.*, defendant's own bank records, telephone records, and business records) may be provided to that defendant unredacted.

Defense counsel may also provide unredacted copies of Protected Information to any experts retained to assist with the preparation of the defense in the captioned case. The defendant, all members of the defense team, and any experts who receive discovery under this Order shall be provided a copy of this Order along with those materials and shall initial and date the order reflecting their agreement to be bound by it.

The materials provided pursuant to this protective order may only be used for the specific purpose of preparing or presenting a defense in this matter unless specifically authorized by the Court.

This Order shall also apply to any copies made of any materials covered by this Order.

**IT IS FURTHER ORDERED** that neither a defendant nor any member of the defense team shall provide any discovery material produced by the government—whether or not the material constitutes or contains Protected Information within the meaning of this Order—to any third party (*i.e.*,

PROTECTIVE ORDER
CR 18-00310 EMC

1  any person who is not a member of the defense team) or make any public disclosure of the same, other

2  than in a court filing, without the government's express written permission or further order of this Court.

3  If a party files a pleading that references or contains or attaches Protected Information subject to this

4  Order, that filing must be under seal.[1]

5      **IT IS FURTHER ORDERED** that defense counsel shall return materials subject to this

6  Protective Order (including any copies) to the United States within 14 days after whichever event occurs

7  last in time: dismissal of all charges against the defendant; defendant's acquittal; defendant's sentencing;

8  or the conclusion of any direct appeal. After the United States receives documents and materials subject

9  to this Order, it shall maintain those documents and materials until the period for filing a motion under

10  28 U.S.C. § 2255 has expired. After the statutory period for filing a motion under 28 U.S.C. § 2255 has

11  expired, the United States is free to destroy documents and materials subject to this Order. If defendant

12  is represented by counsel and files a motion pursuant to 28 U.S.C. § 2255, the United States will provide

13  counsel with the documents and materials subject to this Protective Order under the terms of this Order.

14  Defendant's attorney in any motion under 28 U.S.C. § 2255 shall return the documents and materials

15  subject to this Protective Order within 14 days after the district court's ruling on the motion or 14 days

16  after the conclusion of any direct appeal of the district court's order denying the motion, whichever is

17  later. This stipulation is without prejudice to either party applying to the Court to modify the terms of

18  any protective order. This Court shall retain jurisdiction to modify this Order upon motion of either

19  party even after the conclusion of district court proceedings in this case.

20

21  **IT IS SO STIPULATED.**                    ALEX G. TSE
                                                United States Attorney
22

23

24  Dated:                                      _Robin L Harris_
                                                ROBIN HARRIS
25                                              Assistant United States Attorney

26

27

---

28     [1] This Order authorizes such filings under seal and the parties are not required to seek additional authorization from the Court to do so.

PROTECTIVE ORDER
CR 18-00310 EMC

/s/
SAM EDGERTON
Counsel for Defendant GERRANS

**IT IS SO ORDERED.**

Dated:

Honorable Edward M. Chen
United States District Judge

PROTECTIVE ORDER
CR 18-00310 EMC

# Exhibit 2



U.S.
v.
Lawrence Gerrans
CR 18-00310 EMC
jail calls
2/1/20 – 2/2/20

UNITED STATES ATTORNEY'S OFFICE, NORTHERN DISTRICT OF CALIFORNIA

Sensitive but
Unclassified

Notice: The documents provided on this Compact Disc are for your reading and reviewing only, and are not to be modified in any manner. We maintain the original documents from which our Master Disc and your disc were made. If there are any discrepancies between the documents or images derived from your disc which you reference or submit, and the original documents and Master Disc, the original documents and the Master Disc will constitute the best evidence.