UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>LAWRENCE J. GERRANS,<br>Defendant. | Case No. 18-cr-00310-EMC-1<br><br>**ORDER DENYING DEFENDANT'S MOTION FOR RELEASE PENDIING SENTENCING**<br><br>Docket No. 160 |

Having considered the briefs and supporting materials filed by the parties and argument of counsel presented at two telephonic hearings herein (wherein Defendant's appearance was waived), and good cause appearing therefor, the Court **DENIES** Defendant's Motion for Release Pending Sentencing.

The parties agree the question of Defendant's release is governed by 18 U.S.C. Section 3143(a)(1). Neither Section 3143(a)(2) nor the "exception reasons" provision of Section 3145(c) which applies to those detained under Section 3143(a)(2) applies. The Court notes, even if there were "exceptional reasons," release under Section 3145(c) would not be proper unless the judicial officer finds by clear and convincing evidence that the defendant is not likely to flee or pose a danger to the safety of any other person or the community if released with conditions under Section 3142(b) or (c). After conviction, exceptional reasons can override the requirement of a substantial likelihood that a motion for acquittal or new trial will be granted (Section 3142(a)(2)) or that the appeal is not for the purpose of delay and raises a substantial question of law or fact likely to result in relief on appeal (Section 3143(b)(1)); it does not, however, authorize relief if there is a risk of flight or danger.

Defendant asserts that he is eligible for temporary release under Section 3142(i) which

permits release of pretrial detainees held under Section 3142 "to the extent that the judicial officer determines such release to be necessary for the preparation of the persons defense or for another compelling reason." He argues that the risk of contracting COVID-19 in San Francisco county jail (where Defendant is currently housed) represents such a compelling reason to release. The Court is sympathetic and shares the concern that anyone detained by this or any other court could be subject to a heightened risk of exposure to COVID-19. But the Court finds no persuasive authority allowing for release where there is a risk of flight or danger of a convicted defendant. Section 3142(i) by its terms applies to *pre-trial* unconvicted detainees. By its plain language it does not apply to Section 3143 which governs the detention *after* conviction. *See United States v. Felder*, Case No. 14-CR-00536 MMC (Order Denying Defendant's Request for Release, Docket No. 345, April 3, 2020) (finding Section 3142(i) does not apply to detention under Section 3143). *Cf.* Fed. R. Crim. P 46(a) with 46(c) (distinguishing pretrial and post-trial detention). While Section 3143(a) makes reference to Sections 3142(b) and (c) in affording the court the power to impose conditions of release thereunder, it does not refer to or incorporate Section 3142(i); reference to Sections 3142(b) and (c) merely allows for the imposition of conditions of release *if* the court find release appropriate. Moreover, as discussed above, the fact that Section 3145 "exceptional reasons" provision narrowly prescribes the scope of the safety valve applicable to post-conviction detentions dispels the notion that there is an additional safety valve applicable under Section 3142(i).

Even if the compelling reasons exception could be applied to post-conviction detentions under Section 3143 under some theoretical circumstance – *e.g.* if the person is held solely because of flight risk, *see United States v. Michaels*, No. SACR 16-76-JVS, 2020 U.S. Dist. LEXIS 56239 (C.D. Cal. Mar. 26, 2020) – the Court will not do so here where there is a threat to the safety of others. Finally, the Court notes that Defendant has not presented compelling evidence that he is in the group of people considered most vulnerable as identified by the CDC guidelines on COVID-19. His high blood pressure is under control by medication, and his stress test was negative for myocardial ischemia. While Defendant presents other medical conditions, none obviously fall under the CDC guidelines. The only medical opinion submitted on whether Defendant is subject

2

to heightened risk comes not from a treating or examining physician, but from a "concerned acquaintance" – a physician Defendant met through business dealings who has never examined Defendant or even seen his medical records.

In any event, regardless of the strength of the medical evidence presented here, the Court concludes the central inquiry is whether there is clear and convincing evidence that Defendant does not present a risk a danger to the safety of any other person of the community. The government does not place emphasis on flight risk.

Having reviewed the record, the Court cannot find there is clear and convincing evidence Defendant does not pose a safety risk to prosecutor Robin Harris. Chris Gerrans' statement contained in the 302 that Defendant invited him to "take out" Ms. Harris after she returned from work is credible. It was timely reported as a contemporaneous statement in the 302, and he affirmed it in his recent letter to the Court (erroneously dated May 8 rather than April 8). Although Chris Gerrans is not free from credibility questions, the Court found him in general to be a credible witness at trial. Further, his statement is not inconsistent with Defendant's focused and intense hostility against Ms. Harris personally. While Defendant questions the timeliness (or untimeliness) of Mr. Gerrans' report to official of the threat, coming on the eve of trial, Chris Gerrans had nothing obvious to gain personally from making the disclosure.

Perhaps even more troubling is Defendant's own words contained in letters written to his wife from Santa Rita jail. These letters display a disturbing fixation – almost an obsession – on Ms. Harris, repeatedly accusing her of conspiring with others to prosecute and harm Defendant, and acting vindictively against him because of local political issues. The wild conspiracy theory Defendant has woven around Ms. Harris and his elaborate plan to bring a civil lawsuit against the alleged conspirators betray a troubled mind. Given Defendant's temper (as displayed during the storage facility incident), the risk of danger to Ms. Harris cannot be ignored. The Court also notes that Defendant has had access to guns, and although counsel represents those guns have either been sold or are in the hands of third parties, Defendant's experience with and potential access to guns cannot be entirely ignored.

Nor can the Court find there is clear and convincing evidence that Defendant does not pose

3

a danger to the safety of Chris Gerrans, especially now that Chris Gerrans has testified in no uncertain terms at trial, and Defendant has been convicted and, according to the government, now faces a potentially lengthy sentence (the government asserts a low end Guideline range of about 17 years). Any anger Defendant felt before (*e.g.* when he confronted Chris Gerrans at the storage facility and stated that if it were not for the cameras, he would have killed him) is likely, if anything, to be magnified post trial.

The Court has read the numerous letters of support from friends and family, much of it testifying to the fact that Defendant is not a violent man. Yet, it is clear from the record that Mr. Gerrans has refused on numerous occasions to follow the law and the orders of this Court. His bail pending trial was revoked for good reason; he engaged in numerous acts in violation of his bond. Even after bail was revoked, he appeared to tolerate violation of the protective order.

Given the express threat made against Ms. Harris, his demonstrated hostility towards and fixation with her, the understandable concerns for the safety of Chris Gerrans, and Defendant's proven inability (or unwillingness) to comply with the law and orders of the Court, the Court cannot conclude there is clear and convincing evidence that Defendant does not pose a danger to the safety of any other person or the community. Defendant's motion is therefore denied.

This order disposes of Docket No 160.

**IT IS SO ORDERED**.

Dated: April 14, 2020

_____
EDWARD M. CHEN
United States District Judge

4