SHAWN HALBERT (CSBN 179023)
214 Duboce Avenue
San Francisco, California 94103
Telephone: (415) 703-0993
shawn@shawnhalbertlaw.com

Attorney for Defendant Larry J. Gerrans

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | ) CASE NO. CR 18-00310 EMC |
| | ) |
| | ) **DEFENDANT'S NOTICE OF EXPOSURE TO** |
| | ) **COVID-19 AND US MARSHAL'S FAILURE TO** |
| v. | ) **PROVIDE FOR APPROPRIATE QUARANTINE** |
| | ) **BEFORE IN-PERSON SENTENCING;** |
| | ) **REQUEST FOR COURT INTERVENTION** |
| | ) |
| LARRY J. GERRANS, | ) |
| | ) Court: Honorable Edward M. Chen |
| Defendant. | ) |
| | ) |
| | ) |

**INTRODUCTION**

The defense files this Notice to seek the Court's intervention in a dangerous and untenable situation. Six days before the in-person sentencing scheduled before this Court on the morning of November 4, 2020, defendant Larry Gerrans remains where he has been held since October 8, 2020, in a privately operated detention center in Nevada in which there is a huge outbreak of COVID-19. He is physically and psychologically decompensating after being kept in a hangar with approximately 50 other men, a number of whom have tested positive for COVID-19, under conditions where he cannot sleep and is in fear for his life. He cannot be timely quarantined by November 4, 2020.

1

Def's Notice of Jail Conditions and Exposure to COVID-19
CASE NO. CR 18-00310 EMC

**RELEVANT PROCEDURAL AND FACTUAL BACKGROUND**

As of May 15, 2020, Mr. Gerrans' sentencing date was August 20, 2020. Dkt No. 225. At the time, he was in custody at the San Francisco Jail. **Three weeks before sentencing,** on July 27, 2020, the US Marshal moved Larry Gerrans to the Los Angeles Detention Center ("LA MDC"). Because Mr. Gerrans was put in quarantine with no phone access for the 14 days after he was transferred and the defense could not work with him in completing responses to the draft PSR, the defense had to move to continue the sentencing hearing to September 19, 2020, Dkt No. 281, which the Court granted. Dkt No. 284. During the next month, because defense counsel was only able to speak to Mr. Gerrans one time since he had been moved to LA MDC, counsel filed an unopposed motion to continue the sentencing to October 7, 2020, Dkt No. 288, which the Court granted. Dkt No. 289.

Due to materials produced by the government the night before the final PSR due date, the PSR being late, and a lack of access to Mr. Gerrans, defense counsel moved to strike the new materials from the PSR or, in the alternative, to continue the sentencing date. Dkt No. 293. The Court denied the motion to strike but granted the motion in the alternative to move the sentencing date, and set the sentencing date for November 4, 2020. Dkt No. 298.

At LA MDC, Mr. Gerrans had his blood pressure taken thirteen times over the almost three months that he was there. His readings have included dangerously high readings, including 150/90 (July 28), 184/134 (August 3), 150/110 (August 10), 167/100 (August 11), 149/97 (August 18), 148/99 (September 3), 161/100 (September 15) and 153/90 (September 25).[1]

---

[1] On June 25, 2020, the CDC updated its guidance to include people with hypertension as individuals who "might be at an increased risk for severe illness from COVID-19." *See* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html. The CDC defines "[s]evere illness from COVID-19" as "hospitalization, admission to the ICU, intubation or mechanical ventilation, or death." *See* Center for Disease Control, *Evidence used to update the list of underlying medical conditions that increase a person's risk of severe illness from COVID-19*, (June 25, 2020), available at https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/evidence-table.html. The CDC updated its guidance in response to several published and peer-reviewed studies. *See Evidence used to update the list of underlying medical conditions that increase a person's risk of severe illness from COVID-19*, (June 25, 2020) (citing studies, including, Pranata, R., et al., *Hypertension is associated with increased mortality and severity of disease in*

On October 8, 2020, approximately a month before the current sentencing date, the US Marshal moved Mr. Gerrans from LA MDC to the Nevada State Detention Center ("NSDC"), a non-governmental federal detention center run by CoreCivic in Pahrump, Nevada. The USM **drove** him in a van from Los Angeles, California to Pahrump, Nevada. Mr. Gerrans was again placed in quarantine for two weeks, where he was kept in his cell except for half an hour three days per week and had virtually no access to attorney phone calls until October 23, 2020, when he was moved to Unit FF, which constitutes a hangar room containing approximately 50 men in as many beds **in the same room**.

Undersigned counsel learned from Mr. Gerrans over the weekend of October 24-25, 2020 that three detainees who had been in the hangar and with whom he has had contact had been tested for COVID-19 (a total of four detainees who were due to be transferred out of Pahrump were tested before being transferred; three had tested positive for COVID-19 and one person had an inconclusive result.)[2] The three men who tested positive, one of whom had been working in the kitchen up until the morning he tested positive, were removed from Unit FF and the person with the inconclusive test remained. Mr. Gerrans had contact with all of these men. Detainees are mostly provided with masks but most are not wearing them. Guards sometimes wear masks but take them down when they talk. Mr. Gerrans has not been able to sleep because men are awake all night. There have been several riots in the jail since Mr. Gerrans has been there. When Mr. Gerrans is able to call counsel, it is after waiting for a public payphone that is not disinfected or wiped down between uses. Mr. Gerrans reports that atmosphere in

---

*COVID-19 pneumonia: A systematic review, meta-analysis and meta-regression*, Journal of the Renin-Angiotensin-Aldosterone System, 2020). Available at https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/evidence-table.html. "Raised blood pressure remains the leading cause of death globally, accounting for 10.4 million deaths per year." 2020 International Society of Global Hypertension Practice Guidelines, May 6, 2020. https://www.ahajournals.org/doi/10.1161/HYPERTENSIONAHA.120.15026

[2] Undersigned counsel declares under penalty of perjury that the facts contained in this paragraph were obtained from Mr. Gerrans, who affirmed that they are true and correct. Counsel has no way of obtaining a signed declaration from Mr. Gerrans, and thus includes this declaration. Mr. Gerrans' general statements about conditions in Pahrump are confirmed by the attached declarations from other detainees and the habeas petition filed by the Office of the Federal Public Defender, D. Nevada, and COVID-19 figures provided by the US Marshal in Nevada.

Def's Notice of Jail Conditions and Exposure to COVID-19
CASE NO. CR 18-00310  EMC

the hangar is tense and frightening and he feels he is mentally decompensating due to lack of sleep and fear of COVID-19 exposure. He is now on substantially increased dosages of his hypertension medication from the dosages at LA MDC (Amlodipine was increased from 5 mg to 20 mg,[3] Lisinopril was increased from 30 to 40 mg, Hydrochlorothiazide was increased from 5mg to 25 mg), but his blood pressure is still approximately 150/100. The doctor he saw at Pahrump told him that the medication he had been given at LA MDC since early August, Atenolol, was dangerous for him to take and it has been discontinued. Mr. Gerrans is unable to have access to the kind of food and movement that are vital to reducing hypertension.[4]

The COVID situation at the privately-operated Nevada State Detention Center in Pahrump is a total disaster. The US Marshal in Nevada notified the Office of the Federal Public Defender in Nevada on October 6, 2020 that there were **41 new positive COVID-cases** in a population of only 650 people.[5] On October 9, 2020, it was reported that a 29-year old federal detainee who had sought release from the NSDC had died of COVID-19,[6] and four days later, on October 13, 2020, it was reported that a staff member died from COVID.[7] On October 26, 2020, the USM in Nevada reported **40 *additional***

---

[3] The starting dosage is 2.5 mg and the maximum dosage is supposed to be 10 mg. https://www.drugs.com/dosage/amlodipine.html

[4] "Lifestyle modification is also the first line of antihypertensive treatment. Modifications in lifestyle can also enhance the effects of antihypertensive treatment," with salt reduction, diet and exercise being the key lifestyle modifications. 2020 International Society of Global Hypertension Practice Guidelines, May 6, 2020. https://www.ahajournals.org/doi/10.1161/HYPERTENSIONAHA.120.15026 More than 50% of hypertensive patients have additional cardiovascular risk factors. *Id.*

[5] Dkt No. 21 in *Carranza et al v. Koehn*, 2:20-cv-1586 GMN-DGA (D. Nev), attached as Exhibit 1. The Office of the Federal Public Defender in Nevada filed a hybrid 2241 petition and a complaint for injunctive relief under 28 USC § 1331 in the event that the district court decided it could not challenge the conditions of confinement through a habeas petition, as there is a current circuit split on this issue and Ninth Circuit has not decided. The district court did not allow the case to proceed as a habeas case but it is pending as a civil rights suit for injunctive relief.

[6] https://www.reviewjournal.com/local/local-nevada/prisoner-at-pahrump-facility-1st-known-inmate-in-nevada-to-die-of-coronavirus-2145165/

[7] https://www.reviewjournal.com/news/federal-detention-center-officer-dies-of-potential-covid-

4

Def's Notice of Jail Conditions and Exposure to COVID-19
CASE NO. CR 18-00310 EMC

1 **positive cases** with 73 tests pending and 3 staff members positive for COVID.[8] This means that more than 12% of all detainees at NSDC tested positive for COVID-19 in a period of less than three weeks.

A report in the Las Vegas Review-Journal on October 26, 2020 revealed: "There are nearly four times more inmates who have tested positive in the federal detention center run by CoreCivic than positive tests from all state prisoners -- by far the highest numbers of any detention center in Nevada."[9] There is a civil suit filed by the Federal Public Defender's Office in Nevada concerning conditions at NSDC. More than 50 detainees at NSDC have signed declarations alleging, among other things, that there is inadequate sanitation, that people are not wearing masks, that staff members have admitted coming to work COVID-19 positive so that they do not need to use sick days, that people are not being tested for COVID-19, that people with symptoms of COVID-19 are not properly quarantined and are not receiving proper medical care.[10] The declarations also support Mr. Gerrans' Notice re Lack of Contact with Counsel, Dkt No. 300, which the defense filed on October 20, 2020 describing how Mr. Gerrans was allowed out of his cell for only 30 minutes three days per week for showering and any telephone calls. *Id.*

### NOTICE

Despite Mr. Gerrans' undisputed exposure to COVID-19 in his current conditions of confinement, in response to undersigned counsel's communication of concern, two days ago the Assistant Chief Deputy of the N.D. Cal. USM told the parties that the USM intend to bring Mr. Gerrans for his court appearance, in person, on November 4, 2020, because there is no "confirmation" that he has

---

19-2149256/

[8] Undersigned counsel has viewed a private document provided by USM Gary Schofield to the Court on October 26, 2020 that contains these numbers. A Detention Manager Inspector in Las Vegas reported to undersigned counsel that as of October 28, 2020, there were 38 positives COVID-19 cases at NSDC with 16 tests pending, of the entire population of 656 prisoners. It is not clear whether there are additional positive tests or how those numbers correlate to the official USM total given on October 26.

[9] Katelyn Newberg, Las Vegas Review-Journal, October 26, 2020, "Time bomb': Inside an outbreak at Pahrump's federal detention center. https://www.reviewjournal.com/local/local-nevada/time-bomb-inside-an-outbreak-at-pahrumps-federal-detention-center-2162460/

[10] *See* Exhibit 2 (U.S. v. Clarke, 20-cr-00052-APG-EJY (D. Nev.), Dkt 35-1).

been exposed to COVID-19, and because "[t]here are social distancing measures in place in the courtroom and all parties will be wearing face coverings."

This response is astounding. Even *without* known exposure to COVID-19 and having tested negative before each transfer, Mr. Gerrans had to quarantine for at least two weeks at the last two facilities to which he was transferred (LA MDC and NSDC) simply because he was traveling from one place to another (including being driven by the USM from the Los Angeles Metropolitan Detention Center to the Nevada State Detention Center on October 8). As this Court is well aware from a variety of contexts, a 14-day quarantine is also required any time a person has been exposed to COVID-19. Federal detainees in quarantine at Santa Rita Jail are not brought to Court. Undersigned counsel has been informed that no detainees from the NSDC are even allowed to be brought to court in the District of Nevada right now. The requirement of being six feet apart and wearing masks is standard procedure for people who are **not** known to have COVID-19, **not** for incarcerated people who are in the midst of a huge COVID outbreak.[11] This is not safe for anyone in the courtroom.

It is unknown how and when the USM intends to transfer Mr. Gerrans to the Bay Area, even though it is six days before sentencing. Any transfer soon before the sentencing day will aggravate the decompensation that Mr. Gerrans is experiencing from sleep deprivation and elevated stress. And it should go without saying that undersigned counsel's ability to discuss and work on the final sentencing briefing with Mr. Gerrans has been inadequate. He has not yet even seen the government's Sentencing Memorandum even though defense counsel has to file a response to it shortly, which she cannot do without talking to him about it.

---

[11] This Court has before it approximately 25 letters from people who have known Larry Gerrans for most or all of his life. Without exception, every single person says that Mr. Gerrans is a kind, generous and selfless person. His life has been characterized by helping people. This Court also has a report from a UCSF psychologist who conducted extensive testing and interviews of Mr. Gerrans. Mr. Gerrans does not have a single disciplinary violation at four different jails, where he was incarcerated under highly stressful and dangerous conditions. One thousand, three hundred and fifty-nine people have signed a petition for Larry Gerrans' release. (The petition can be found at change.org/larrygerrans). Mr. Gerrans' wife and children are desperately worried about the current conditions of Mr. Gerrans' confinement.

6

Def's Notice of Jail Conditions and Exposure to COVID-19
CASE NO. CR 18-00310 EMC

We are in the middle of a worsening global pandemic. Mr. Gerrans has a sharply increased risk of death or permanent injury from contracting COVID-19, which has disproportionately affected people who are incarcerated or detained in the United States. The COVID-19 case rate in prisons is more than five times higher and the age-adjusted death rate was three times higher than that of the overall US population, and COVID-19 outbreaks grow faster for incarcerated people, at an average daily growth rate that is almost three times greater than the general US population.[12] A Johns Hopkins study finds: "A modeling study of Immigration and Customs Enforcement detention centers predicts that once SARS-CoV-2 enters a detention facility, 72% to 100% of individuals housed in that facility will be infected within 3 months." *Id.*

Given all of these circumstances, the defense respectfully asks the Court to take appropriate measures to protect not only Mr. Gerrans but all counsel and the Court.

Dated: October 29, 2020                                   Respectfully submitted,

                                                                              _____/s/_____
                                                                              SHAWN HALBERT
                                                                              Counsel for Defendant Larry J. Gerrans

---

[12] Watson C, Warmbrod L, Vahey R, et al. COVID-19 and the US Criminal Justice System: Evidence for Public Health Measures to Reduce Risk. Baltimore, MD: Johns Hopkins Center for Health Security; October, 2020, attached hereto as Exhibit 3, at page 11. "From its series of seroprevalence studies across the United States, the US Centers for Disease Control and Prevention (CDC) estimates that actual infections could be 6 to 24 times higher than the number of cases detected and reported, depending on location in the country. The CDC estimates suggest that there may be more than 75,000 excess deaths in 2020 thus far that are not accounted for in COVID-19 reporting. It is likely that a vast majority of those excess deaths are COVID-19 cases that were undiagnosed because of lack of testing or access to medical care." *Id.*

Def's Notice of Jail Conditions and Exposure to COVID-19
CASE NO. CR 18-00310 EMC