UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| USA,<br><br>               Plaintiff,<br><br>    v.<br><br>GERRANS,<br><br>              Defendants. | Case No. 18-cr-00310-EMC-1<br><br>**ORDER DENYING DEFENDANT'S MOTION TO REDUCE SENTENCE**<br><br>Docket No. 455 |

## I.  BACKGROUND

Defendant Lawrence Gerrans was convicted by a jury on all twelve counts charged by the prosecution including: five counts of wire fraud in violation of 18. U.S.C. § 1343; one count of engaging in monetary transactions in criminally derived property in violation of 18. U.S.C. § 1597; three counts of making or using false writings and documents in violation of 18. U.S.C. § 1001(3); one count of contempt of court in violation of 18. U.S.C. § 401(3); one count of witness tampering in violation of 18. U.S.C. § 1512(b)(1); and one count of obstruction of justice in violation of 18. U.S.C. § 1503. *See* Docket No. 144 (Jury Verdict Form). Mr. Gerrans was sentenced to 135 months of imprisonment on November 6, 2020, a sentence at the low end of the Guidelines range as calculated by the Court. *See* Docket No. 320 (Judgment) at 2. Mr. Gerrans was taken into custody on August 15, 2019; he has served approximately 50 months of his 135-month sentence. *See* Docket No. 46.

Mr. Gerrans previously challenged his conviction and sentence on appeal, arguing that he suffered from ineffective assistance of counsel, jury instruction error, prosecutorial misconduct, and a sentencing guideline calculation error. *See United States v. Gerrans*, No. 20-10378, 2022 WL 73051 (9th Cir., Jan. 7, 2022). The Ninth Circuit upheld the conviction and sentence. *Id.* The Supreme Court denied Mr. Gerrans' petition for certiorari. *See Gerrans v. United States*, No.

21-81838, 143 S. Ct. 174 (2022).

Mr. Gerrans has now filed a motion for release from the custody of the BOP, seeking a reduction of his sentence and compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i) based on his own medical issues and medical issues and difficult circumstances of his family, among other circumstances. *See* Docket No. 455 ("Mot.") at 2–12. Mr. Gerrans also moved for release pending consideration of his § 2255 habeas application which is yet to be filed. *See id.* at 16–19.

Specifically, Mr. Gerrans asserts that he has a heart defect (left and right bundle branch blocks), hypertension, and hyperlipoidemia. Mot. at 4 (citing Ex. A (Health Assessment)). Mr. Gerrans also contends that he undergoes treatment for high blood pressure and high cholesterol, shortness of breath, and difficulty breathing. *Id.* (citing Ex. B (BOP Health Services Clinical encounter)). Further, Mr. Gerrans has a Body Mass Index (BMI) of 37 qualifying him as obese and pre-diabetic. *Id.* (citing Ex. C (BOP Medical Documents)). He asserts that these risks are tied to severe outcomes connected with COVID-19. *Id.* at 6–7. Mr. Gerrans has not received any vaccination for COVID. *See* Docket No. 457 ("Reply") at 2. Mr. Gerrans also contends that his heart conditions make receiving the vaccine unsafe. Reply at 1–5.

Mr. Gerrans also states that he was improperly denied home confinement relief under the CARES act. Mot. at 7. Specifically, he was a member of a civil class action lawsuit, *Torres et al. v. Milusnic*, CV 20-4450 CBM (C.D. Cal.), that successfully challenged the denial of release to home confinement under the CARES Act solely for length of sentence served. *Id.* at 8. The facility where Mr. Gerrans was housed was ordered to re-evaluate class members' entitlement to home confinement. 2021 WL 3829699 (C.D. Cal. Aug. 27, 2021) at *1. Mr. Gerrans contends that he was denied proper re-evaluation, having been transferred to another facility not covered by the order during the pendency of that litigation. Mot. at 8.

Mr. Gerrans also explains that his wife and adult children's physical and mental health have deteriorated since his incarceration. Mot. at 8. His wife suffers from degenerative disk disease, hindering her ability to complete daily tasks. *Id.* His wife's mental health has also suffered; in connection with the seizure of the family's assets and other financial issues she has developed panic attacks and depression. *Id.* at 9. The family is often behind on bills. *Id.* Mr.

2

Gerrans' daughters have also struggled and developed mental illnesses. *Id.* His second-youngest daughter requires close monitoring due to suicidal ideations among other issues. *Id.* at 9–10.

Mr. Gerrans further argues that the harshness of his confinement warrant release. Mot. at 10–12. Specifically, nearly all of his incarceration has coincided with the pandemic resulting in difficult conditions such as lockdowns, isolated confinement, and limited participation in work, educational, or recreational activities in addition to other concerns. *Id.* He also argues that his sentence is disproportionately long compared to average sentences for the underlying offense of fraud. Mot. at 12–16.

## II.     LEGAL STANDARDS

A.     Compassionate release under 18. U.S.C. § 3582(c)(1)(A)(i)

The compassionate release statute, 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act on December 21, 2018, provides:

> (c) Modification of an Imposed Term of Imprisonment.—The court may not modify a term of imprisonment once it has been imposed except that—
>
> (1) in any case—
>
> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction … and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission …

The Sentencing Guidelines policy statement, at USSG § 1B1.13, is no longer binding, but "may inform a district court's discretion for [compassionate release] motions filed by a defendant." *United States v. Aruda*, 993 F.3d 797, 802 (9th Cir. 2021). USSG § 1B1.13 states that a court may grant release if "extraordinary and compelling circumstances" exist, "after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable," and

3

the Court determines that "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." 18 U.S.C. § 3553(a) lists factors to consider during sentencing, including the nature and circumstances of the offense, kinds of sentences available, and the need to avoid sentencing disparities among defendants with similar conduct.

To the extent that a court grants compassionate release, it must perform a sequential inquiry whereby the court finds extraordinary and compelling circumstances warranting release and then the court must account for section 3553(a) factors. *United States v. Keller*, 2 F.4th 1278, 1284 (9th Cir. 2021). When the court denies compassionate release, the court need not evaluate each in a sequential order. *Id.* In other words, to grant compassionate release this Court must conclude that the defendant satisfies three predicates: (1) that there are "extraordinary and compelling reasons warrant[ing]" a sentence reduction: (2) that the reduction is consistent with applicable policy statements by the Sentencing Commission; and (3) the factors presented in section 3553(a) weigh in favor of release. *See United States v. Wright*, 46 F.4th 938, 945 (9th Cir. 2022). However, the Court may "deny compassionate release if a defendant fails to satisfy any of these grounds." *Id.* (citing *Keller*, 2 F.4th at 1284).

Application note 1 to the Sentencing Guidelines policy statement, at USSG § 1B1.13, identifies "extraordinary and compelling reasons" that may justify release:

> 1. Extraordinary and Compelling Reasons.—Provided the defendant meets the requirements of subdivision (2), extraordinary and compelling reasons exist under any of the circumstances set forth below:
>
> (A) Medical Condition of the Defendant.—
>
> (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
>
> (ii) The defendant is—
>
> (I) suffering from a serious physical or medical condition,
>
> (II) suffering from a serious functional or cognitive impairment, or
>
> (III) experiencing deteriorating physical or mental health because of

>the aging process, that substantially diminishes the ability of the defendant to provide selfcare within the environment of a correctional facility and from which he or she is not expected to recover.
>
>(B) Age of the Defendant.—The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.
>
>(C) Family Circumstances.—
>
>(i) The death or incapacitation of the caregiver of the defendant's minor child or minor children
>
>(ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.
>
>(D) Other Reasons.—As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

Amendments to USSG § 1B1.13 that went into effect on November 1, 2023, allow the Court to consider the following "extraordinary and compelling circumstances" that relate to the spread of infectious disease:

>(C) The defendant is suffering from a medical condition that requires longterm or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death.
>
>(D) The defendant presents the following circumstances—
>
>(i) the defendant is housed at a correctional facility affected or at imminent risk of being affected by (I) an ongoing outbreak of infectious disease, or (II) an ongoing public health emergency declared by the appropriate federal, state, or local authority;
>
>(ii) due to personal health risk factors and custodial status, the defendant is at increased risk of suffering severe medical complications or death as a result of exposure to the ongoing outbreak of infectious disease or the ongoing public health emergency described in clause (i); and
>
>(iii) such risk cannot be adequately mitigated in a timely manner.

2023 Adopted Amendments to the Sentencing Guidelines, at 9.

//

"As the movant, Defendant bears the burden of establishing that he is eligible for a sentence reduction" under Section 3582(c)(1)(A), i.e., the compassionate release statute. *United States v. Grummer*, 519 F. Supp. 3d 760, 762 (S.D. Cal. 2021).

B. <u>Release pending consideration of § 2255 habeas petition</u>

Although the Ninth Circuit has not definitively addressed the question, district courts have found authority to grant bail pending a habeas proceeding. *United States v. Lee*, 2016 WL 1039046, at *2 (D. Hawaii Mar. 15, 2016) (citing *Hall v. S.F. Superior Court*, 2010 WL 890044, at *2 (N.D. Cal. Mar. 8, 2010)). In deciding whether to grant bail pending a habeas application, courts consider whether the petitioner has demonstrated exceptional or extraordinary circumstances and whether there is a high probability of success on the merits. *See id.* at *3.

### III.   DISCUSSION

A. <u>Compassionate release under 18. U.S.C. § 3582(c)(1)(A)(i)</u>

Mr. Gerrans argues that "extraordinary and compelling circumstances" exist warranting compassionate release. Mot. at 4–16. Specifically, Mr. Gerrans states that: (1) he has numerous and severe medical conditions heightening his COVID risk; (2) he was improperly denied home confinement relief despite qualifying under the CARES Act; (3) his family is facing pressing health and financial concerns; (4) the harshness of his sentence during the pandemic warrants release; and (5) his sentence is disproportionately long. *Id.* He argues these are circumstances warranting his release. *Id.* Each argument is addressed in turn below.

1. <u>Medical conditions and heightened COVID risk</u>

Mr. Gerrans asserts that his heart defect (left and right bundle branch blocks), hypertension/high blood pressure, obesity, and high cholesterol, among other health issues, placing him at increased risk of severe outcomes associated with COVID-19. *See* Mot. at 4–5.

In his motion, Mr. Gerrans misrepresents certain medical studies he cites.[1] However, as

---

[1] For example, he stated that a 2022 study concludes that the risk of COVID-19 infection was higher in prison as opposed to the general population, and that mortality was 80.4% higher among prisoners than the general public. Mot. at 6 n.6. However, this study in fact quotes from another study "comparing mortality in prisons from 2015 to 2019 with that of 2020, mortality in 2020 [and finding it] was 42% higher, with 80.4% related to Covid-19." *See* Massimiliano Esposito, et al., *The Risk of COVID-19 Infection in Prisons and Prevention Strategies: A Systematic Review and a*

6

Mr. Gerrans points out, researchers have published studies evidencing a connection between hypertension and severe outcomes caused by COVID-19. Mot. at 5 & n.4 (citing Jiankun Chen, et al., *Hypertension as an independent risk factor for severity and mortality in patients with COVID-19: a retrospective study*, 98 Postgraduate Medical Journal 515, 522 (2022), available at https://pmj.bmj.com/content/postgradmedj/98/1161/515.full.pdf.). The study cited by Mr. Gerrans evaluated 736 patients that had COVID-19 from January to March 2020. *Id.* While relevant, the Court notes that the study does not speak to newer strains or mutations of the virus and outcomes for those with hypertension. *See id.* Mr. Gerrans also presents evidence that he qualifies as obese due to his Body Mass Index of 37, and that he has high cholesterol, and that these conditions also place him at increased risk of severe outcomes associated with COVID-19. Mot. at 4–5 (citing Ex. C (BOP medical documents); Ex. B (BOP Health Services Clinical encounter)). Other courts in the district have found that obesity is in a category of conditions putting adults at increased risk of severe illness from COVID-19. *See United States v. Ramos*, No. 17-CR-00379-LHK-2, 2020 WL 7247208, at *3, *5 (N.D. Cal. Dec. 9, 2020) (citing CDC, *People with Certain Medical Conditions* (updated Dec. 1, 2020), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html).

However, Mr. Gerrans' assertion of extraordinary and compelling circumstances related to enhanced health risk from COVID is undermined by the fact that he has declined vaccination for COVID-19. *See* Opp., Ex. A at 003. Where an individual remains at elevated risk for medical complications because the individual declines vaccination, the risk cannot be characterized as an "extraordinary and compelling" justification for release. *United States v. Broadfield*, 5 F.4th 801, 803 (7th Cir. 2021). As explained in *United States v. Sawyers*, "[t]he glaring consensus among district courts is that refusal of a COVID-19 vaccine subverts a defendant's compassionate release motion." 2021 WL 2581412, at *4 (C.D. Cal. June 22, 2021). *See also United States v. Baeza-Vargas*, 2021 WL 1250349, at *2-3 (D. Ariz. Apr. 5, 2021) ("Judges of this Court, as well as others around the country, have ruled with consistency that an inmate's denial of a COVID-19

---

*New Strategic Protocol of Prevention*, Healthcare (Basel) (2022), available at https://www.ncbi.nlm.nih.gov/pmc/articles/PMC8872582/.

7

vaccination weighs against a finding of extraordinary and compelling circumstances.") (collecting cases).

Mr. Gerrans points to some non-binding precedent outside of the circuit that suggests refusal of a vaccine does not preclude compassionate release. *See* Reply at 3–4 (citing *United States v. Michael Gordon*, No. 14-cr-10304 (D. Mass), ECF Nos. 619, 620; *United States v. Tausif Rahman*, No. 2:11-cr-20540 (E.D. Mich.) ECF No. 739). However, these decisions are not persuasive. It defies common sense to say that assumed medical risk that could be obviated through treatment (here, vaccination), is a sufficiently extraordinary or compelling reason to warrant release.[2] To hold otherwise, would be to allow a defendant properly incarcerated accordingly to law to subvert the sentence imposed by a court by his voluntary decision to expose himself to an avoidable risk.

To be sure, if the inmate's decision is not entirely volitional, i.e., where the inmate can show that there is a real and serious health risk in taking the vaccine, his refusal should not prevent compassionate release. *See, e.g.*, *United States v. Nitsche*, No. 18-CR- 00378-RS-1, 2021 WL 11797414 at n.1 (N.D. Cal. Apr. 1, 2021) (medical risk posed notwithstanding refusal of vaccination may still support release "[i]f a prisoner were to present evidence of a particular condition that rendered vaccination unsafe for him or her"). To this end, Mr. Gerrans cites studies that show potential negative outcomes due to his heart conditions associated with the COVID-19 vaccination. *See* Reply at 2. These studies identify seemingly sporadic and infrequent instances where side effects have been observed for individuals with heart conditions alongside vaccination. *See id.* None establish that current COVID vaccination is clearly contraindicated in Mr. Gerrans' case. Significantly, Mr. Gerrans has not submitted medical substantiation of an unacceptable risk to him, such as a note from a doctor that has assessed his particular circumstances and that recommends that he abstain from vaccination. The only evidence he has submitted is an email drafted by Mr. Gerrans himself when he was offered the vaccine in April 2021, stating that he was advised at that time not to be vaccinated. *See* Docket No. 459 ("Supp. Auth."), Ex. S. Mr. Gerrans

---

[2] In a similar vein, there is evidence in the record showing that Mr. Gerrans has not consistently taken medication prescribed to him to manage his high blood pressure. *See* Opp., Ex. A at 003.

8

1  summarized that at that time, he, in coordination with the Medical Office, determined that he
2  should abstain from vaccination due to a lack of meaningful data available, as it is "simply too
3  early in the epidemic" to have acquired that data. *Id.* This self-serving email, based on hearsay is
4  not convincing. In any event, even if the hearsay statement were accepted, that documentation is
5  outdated and insufficient to establish Mr. Gerrans should not now be vaccinated.

Thus, unless Mr. Gerrans provides the Court with current documentation from a doctor that has evaluated him and determined he should abstain from vaccination, Mr. Gerrans cannot meet his burden of showing that medical risks posed by COVID-19 constitute "extraordinary and compelling" reasons justifying his compassionate release. *See, e.g.*, *Sawyers*, 2021 WL 2581412, at *4. This factor does not weigh in favor of granting release.[3]

### 2. Denial of release under CARES Act

Mr. Gerrans also argues that the previous facility where he was housed violated a court injunction by insufficiently evaluating him for release under the CARES Act. Mot. at 7–8. The problem is that Mr. Gerrans was transferred to another facility not covered by the injunction. If he contends he was improperly transferred, the most appropriate forum for this argument is not this Court, but with District Court for the Central District of California that granted the injunction requiring evaluation for release. *See Torres et al. v. Milusnic*, 2021 WL 3829699 (C.D. Cal. Aug. 27, 2021). This factor does not counsel in favor of release under the current Section 3582 petition.

### 3. Family circumstances

Mr. Gerrans also outlines the hardships that his family is facing and argues that these

---

[3] Mr. Gerrans was also previously infected with Covid-19. *See* Mot., Ex. E (Health Problems Summary). There is some evidence to suggest that contracting and then recovering from Covid-19 diminishes the risk of future serious illness significantly. *See, e.g.*, Qureshi et al., *Re-infection with SARS-CoV-2 in patients undergoing serial laboratory*, Clinical Infectious Diseases (April 25, 2021) https://academic.oup.com/cid/article/74/2/294/6251701?login=true (last visited November 13, 2023). To this end, some courts have found that this diminished risk of serious illness due to prior infection undermines the propriety of compassionate release. *See, e.g.*, *United States v. Pavao-Kaaekuahiwi*, 2020 WL 7700097, at *3 (D. Haw. Dec. 28, 2020). However, Mr. Gerrans appears to have endured a somewhat serious case of Covid-19 in the first instance and presents some symptoms of long Covid-19. *See* Mot., Ex. E (Health Problems Summary). Because the evidence supporting diminished risk of severe outcomes due to previous infection does not address how long Covid intersects with future risk, it is less clear whether Mr. Gerrans having previously been infected with Covid-19 reduces his future risk of severe Covid-19 outcomes. This information does not weigh heavily into the analysis.

9

circumstances also warrant compassionate release. Mot. at 8–10. This includes his daughter's mental health issues including suicidal ideations and his wife's inability to care for his daughter fully. *Id.* Typically, compassionate release is based upon a need to care for a minor or disabled child and requires death or incapacitation of the only available caregiver. *See* USSG § 1B1.13(1)(C)(i) ("death or incapacitation of the caregiver of the defendant's minor child" may constitute extraordinary and compelling reasons).

Here, Mr. Gerrans' children are adults, *see* Mot. at 9, and though may be suffering from psychological stressors and issues such as depression and anxiety, are not disabled in a way that requires the kind of caregiving contemplated by the Guidelines. *Cf. United States v. Kesoyan*, 2020 WL 2039028, at *4 (E.D. Cal. Apr. 28, 2020) (finding that need to care for a 24-year-old child with developmental disability rendering him to be "in no way a functional or independent adult" supported compassionate release); *United States v. Gibson*, No. 18-20091-JAR-4, 2021 WL 5578553, at *2 (D. Kan. Nov. 30, 2021) (granting compassionate release premised upon caregiving needs of adult son who suffered from schizophrenia). Moreover, Mr. Gerrans' wife is alive and, though dealing with her own medical and mental health issues, Mr. Gerrans has not shown that she is incapacitated as the term is typically interpreted in this context. *See* Mot. at 8–9; *see, e.g.*, *United States v. Rand*, 2021 WL 4394782, at *5 (D. Nev. Sept. 24, 2021), *aff'd*, No. 21-10288, 2022 WL 3359173 (9th Cir. Aug. 15, 2022) (finding that alternative caregiver who suffered from cancer was not incapacitated and therefore was able to provide care to incarcerated individual's minor child, making compassionate release on this basis inappropriate); *United States v. Sua*, No. CR 20-00071 JAO, 2023 WL 2758748, at *3 (D. Haw. Apr. 3, 2023) (finding that relative who suffered from medical problems but was able to work constituted an alternative caregiver for the child); *United States v. Hedgecoth*, 2022 WL 5265147, at *2 (S.D. Cal. Oct. 6, 2020) (finding that alternative caregiver suffering from severe health conditions did not necessarily render caregiver incapacitated, warranting release of defendant due to need to care for the minor child).

Mr. Gerrans submitted supplemental authority identifying (nonbinding) cases that were purportedly similar and where compassionate release was granted. *See* Docket No. 459 (Supp.

Auth.) at 2–5.  Many of the cases are not persuasive because of the presence of distinguishing facts therein.[4]  In one case that is helpful to Mr. Gerrans, *United States v. Cruz*, the court granted compassionate release based in part on the need to care for the incarcerated person's mother, i.e., and adult loved one, who was suffering from a terminal disease.  No. 3:94-CR-112 (JCH), 2021 WL 1326851, at *10 (D. Conn. Apr. 9, 2021).  Although Mr. Cruz had three siblings that lived in the area, those siblings were often unavailable; Mr. Cruz was able to care for his mother in a way that his siblings could not.  *Id.*  Accordingly, the court found that this supported compassionate release.  *Id.*; *but see United States v. Ingram*, No. 2:14-cr-40, 2019 WL 3162305, at *2 (S.D. Ohio July 16, 2019) (finding that the need to care for 93-year-old mother in hospice was not an extraordinary and compelling reason for compassionate release as "many, if not all inmates, have aging and sick parents").  However, the court in *Cruz* clarified that Mr. Cruz's "family circumstances do not, standing alone, amount to 'extraordinary and compelling reasons,'" warranting release given that there were other members of Mr. Cruz's family that could potentially care for his mother.  *Id.* at *10 & *10 n.10.  Mr. Cruz's family circumstances were only one factor which—combined with additional compounding circumstances— made compassionate release appropriate.  2021 WL 1326851 at *10.[5]

Similarly, here, Mr. Gerrans' circumstances do not, standing alone amount to "extraordinary and compelling" reasons to grant release, because Mr. Gerrans' wife is providing some level of care and because his children are adults and not disabled in the way typically

---

[4] For example, in *Unites States v. Ochoa*, S.D. Cal. No. 18-cr-03945-BAS-1, Feb. 19, 2023, ECF No. 70 the court granted compassionate release based in part upon caregiving needs for a *minor* child notwithstanding the presence of an alternative caregiver who was not incapacitated.  *See also United States v. Kesoyan*, No. 2:15-CR-236-JAM, 2020 WL 2039028, at *4 (E.D. Cal. Apr. 28, 2020) (granting compassionate release premised upon need to care for developmentally disabled adult child who wholly lacked independence); *United States v. Gibson*, No. 18-20091-JAR-4, 2021 WL 5578553, at *2 (D. Kan. Nov. 30, 2021) (granting compassionate release premised upon caregiving needs of adult son who suffered from schizophrenia); *United States v. Griffin*, No. 1:95-CR-00751-UU-1, 2020 WL 7295765, at *3 (S.D. Fla. Dec. 8, 2020) (granting compassionate release based on need to care for older sister with significant cognitive impairment).

[5] Specifically, the court found compounding factors present in *Cruz* warranted release in the aggregate including: a serious risk of COVID-19, Mr. Cruz's "extraordinary" transformation during incarceration, his young age at the time of the offense, and the fact that he served 31 years of his sentence. 2021 WL 1326851 at *4-10.  Specifically, Mr. Cruz was 15 years old when he was inducted into a gang and 18 years old when he committed the offense. *Id.* at *5-7.

11

contemplated by the Guidelines. *See Cruz*, 2021 WL 1326851 at *11; *cf. Kesoyan*, 2020 WL 2039028, at *4. Accordingly, this factor alone does not constitute an "extraordinary and compelling" reason to grant release. However, because courts have been, at times, willing to consider the caregiving responsibilities for loved ones, notwithstanding presence of alternative caregivers, the Court finds that this factor weighs somewhat toward compassionate release.

4. <u>Harshness of conditions during the pandemic</u>

As noted by Mr. Gerrans, serving his sentence during the pandemic, and specifically, during the early and unprecedented days of the pandemic imposed harsh conditions upon him during confinement. *See* Mot. at 10–11. To this end, some courts have found that the punitive impact of lockdowns and restrictions such as those faced by Mr. Gerrans counsel in favor of compassionate release. *See, e.g.*, *United States v. Rodriguez*, 492 F. Supp.3d 306, 311 (S.D.N.Y. Sept. 30, 2020) (granting compassionate release in part based on punitive effects of lockdowns and restrictions due to COVID-19). While the Court recognizes that the harshness of conditions may warrant early release, or a finding of time served, what Mr. Gerrans experienced was hardly unique. Thousands of individuals incarcerated during the COVID pandemic unfortunately suffered similar hardships. This factor alone cannot be grounds for compassion release lest virtually all those incarcerated during the pandemic be likewise eligible. *See United States v. Veletanlic*, 2021 WL 5205706, at *4 (W.D. Wash. Nov. 9, 2021), *appeal dismissed*, No. 21-30247, 2022 WL 17225921 (9th Cir. June 14, 2022) (quoting *United States v. Bolden*, 2020 WL 4286820, at *7 (W.D. Wash. July 27, 2020) ("[G]eneral conditions that affect inmates indiscriminately [including Covid-19] throughout the prison are insufficient to support an individual defendant's claim for compassionate release.")); *United States v. Lischewski*, 2020 WL 6562311, at *2 (N.D. Cal. Nov. 9, 2020) (denying compassionate release premised upon harshness of conditions during Covid-19 pandemic given that "[e]very prisoner . . . is subject to similar conditions brought about by the COVID-19 pandemic").

In any event, Mr. Gerrans has only served 50 months of his 135-month sentence (less than half). *See* Docket No. 46. As indicated below, the lesser fraction of the sentenced served, counsels against the early release Mr. Gerrans now seeks. While harsh conditions might be

considered should he petition for compassionate release in the future, harsh conditions do not warrant release this early in hisسentence. *See, e.g.*, *Lischewski*, 2020 WL 6562311, at *2 (denying compassionate release premised upon harshness of conditions as the incarcerated individual served less than half of his sentence); *Cf. United States v. Trapps*, 2022 WL 16706710, at *2 n.2 (N.D. Cal. Nov. 4, 2022) (granting compassionate release based in part upon harshness of confinement during pandemic where the defendant had served over seventy-five percent of his sentence).

### 5. Relative length of sentence

Mr. Gerrans also argues that his sentence is unduly long, counseling in favor of compassionate release. Mot. at 12–16. For the reasons considered in the Court's original judgment, the Court maintains its position that the sentence imposed is appropriate. *See* Docket No. 320 (Judgment) at 2. Further, the Ninth Circuit rejected Mr. Gerrans' challenge to his sentence on appeal and upheld his sentence. *See United States v. Gerrans*, No. 20-10378, 2022 WL 73051, at *2 (9th Cir. Jan. 7, 2022), *cert. denied*, 143 S. Ct. 174 (2022). The length of Mr. Gerrans' sentence thus does not support compassionate release.

### 6. Consideration of the factors

Although Mr. Gerrans' family circumstances weigh somewhat in favor of release, as explained above, the circumstances presented alone do not constitute extraordinary and compelling reasons counseling in favor of release at this time. *See* Section III.A.3. When compassionate release has been deemed appropriate given similar family circumstances other factors weighing in favor of release have also been present. *See Cruz*, 2021 WL 1326851, at *4–10 (family circumstances, age of defendant, extraordinary evidence of rehabilitation, and medical risks together constituted circumstances warranting compassionate release); *Ochoa*, No. 18-cr-03945-BAS-1, ECF No. 70 (finding family circumstances involving incarcerated individual's minor child, compounded with the individual having served the majority of her sentence warranted compassionate release); *United States v. Cardenas*, No. 17-CR-339 (AJN), 2021 WL 3722761, at *2 (S.D.N.Y. Aug. 23, 2021) (finding family circumstances, combined with serious medical risks imposed, spotless disciplinary record, and that the individual had served 84 months of original 96 month imprisonment warranted compassionate release). Dissimilarly here, there are no additional

13

1  factors which warrant release. His risk of COVID reinfection can be mitigated by vaccination and
2  he has served less than half his sentence, a sentence which this Court finds was fully warranted
3  under Section 3553(a). Accordingly, the Court finds that Mr. Gerrans has not met his burden of
4  showing compassionate release is appropriate at this time. This ruling is without prejudice to Mr.
5  Gerrans reapplying at a later date for early release.

6  B.     Release pending consideration of § 2255 habeas petition

7  Mr. Gerrans also argues that he should, in the alternative, be released pending his habeas
8  petition. Mot. at 16–18. Release on this basis requires a finding that there is a high probability of
9  success on the merits of the habeas claim. *See. Lee*, 2016 WL 1039046, at *2. Mr. Gerrans argues
10 that he has a high likelihood of success because he suffered from ineffective assistance of counsel.
11 *See* Mot. at 17. However, Mr. Gerrans' argument that he received ineffective assistance of
12 counsel was unavailing on appeal. *See United States v. Gerrans*, 2022 WL 73051, at *2 (9th Cir.
13 Jan. 7, 2022) ("The record as it stands now does not contain evidence establishing that his trial
14 counsel's performance fell below an objectively reasonable standard or that Gerrans was
15 prejudiced by any alleged deficiency."). Although one member of the panel found reason to
16 believe Mr. Gerrans' counsel may not have fulfilled his duty of representation, *id.* at *3 (Baker, J.,
17 concurring in part) the majority of the panel declined to resolve Mr. Gerrans' claims for
18 ineffective assistance of counsel, holding that the record as it stood before the court was
19 insufficient to find in favor of Mr. Gerrans, *id.* at *2. Importantly, the one panel member who
20 raised concerns about trial counsel's apparent performance, that member did not address the
21 critical question whether, even if there was substandard performance by trial counsel, Mr. Gerrans
22 suffered prejudice as required by *Strickland v. Washington*, 466 U.S. 668 (1984). *Id.* at *2–4. In
23 any event, at this juncture, Mr. Gerrans had not yet submitted a habeas petition that fully presents
24 an ineffective assistance claim based on evidence not previously presented on appeal. Thus, the
25 request for bail pending a petition is premature. The Court cannot find such a likelihood of
26 success on the merits of a yet-to-be filed petition with no record.

27 //
28 //

## IV. CONCLUSION

The Court hereby **DENIES** Mr. Gerrans' motion to modify term of imprisonment or for bail pending U.S.C. § 2255 habeas application. This denial is without prejudice to Mr. Gerrans submitting a renewed motion in the future.

**IT IS SO ORDERED**.

Dated: November 14, 2023

_____
EDWARD M. CHEN
United States District Judge